Carmen THOMPSON, et al.

v.

**UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, et al.**

**No. CIV.A. MJG–95–309.**

United States District Court, D. Maryland.

Dec. 12, 2003.

---

Andrew David Freeman, C. Christopher
Brown, Brown, Goldstein and Levy LLP,

Baltimore, MD, Susan R. Podolsky, Jenner and Block, Washington, DC, Susan Goering, Barbara A. Samuels, Eleanor Montgomery, Malissa Ruffner, Law Office, Baltimore, MD, for Plaintiffs.

Terry J. Harris, Law Offices of Terry J. Harris, Baltimore, MD, for Intervenor Plaintiff.

Alison N. Barkoff, Diane Kelleher, Peter J. Phipps, Judry Laeb Subar, U.S. Department of Justice, Washington, DC, Elva Elizabeth Tillman, Baltimore, MD, Harry S. Johnson, Dana Petersen Moore, Whiteford, Taylor and Preston, LLP, Baltimore, MD, Thomas Bevely Corey Law Office, Baltimore, MD, Deborah Sweet Byrnes, Whiteford, Taylor and Preston LLP, Towson, MD, Lisa L. Walker, Wilbur D. Preston, Jr., William F. Ryan, Jr., Charles Ross Diffenderffer, Michael Evan Blumenfeld, Brown, Diffenderffer and Kearney LLP, Baltimore, MD, for Defendants.

### *MEMORANDUM AND ORDER*

GRIMM, United States Magistrate Judge.

This memorandum addresses the Plaintiffs' Motion *In Limine* to Bar Defendants from Calling Certain Witnesses Based on the Local Defendants'[1] Failure to Produce Employees' E-mail, Paper No. 528, which was opposed, Paper No. 550. At the court's request, counsel submitted supplemental letter memoranda. Paper Nos. 565, 569. An expedited hearing was held on November 24, 2003, to permit resolution of the motion before the start of trial on December 1, 2003. During the hearing, I made various rulings that modified my earlier Letter Order, Paper No. 489, which imposed Rule[2] 37(b)(2) evidence preclusion sanctions against the Local Defendants for violating prior court orders requiring production of e-mail records sought by the Plaintiffs in a series of Rule 34 production requests. I also advised counsel that, given the issues raised by this motion

and earlier discovery motions and orders that addressed the scope of discovery of electronically stored information, the duty to preserve such evidence when litigation has commenced or is imminent, and the consequences of a party's failure to obey court orders to produce electronic records—all issues that have not yet been addressed in a published opinion in this district, I would supplement my ruling during the motions hearing with a written memorandum and order to provide a fuller explanation for the rulings. This memorandum provides that supplementation.

A background of the discovery and motions practice in this case is necessary. Plaintiffs served a series of Rule 34 document production requests on the Local Defendants in 1995, 1998, and 2000. Despite some confusion by Local Defendants regarding whether e-mail records were sought in these requests, this court ruled that the requests for production clearly sought electronic records, including e-mail. *See* Paper No. 489 (Letter Order of September 16, 2003); Paper No. 450, Exh. 3 (Memorandum and Order dated November 12, 1998); Paper No. 450, Exh. 5 at 35–40 (Transcript of February 13, 2003, hearing).

When the Local Defendants failed fully to produce e-mail records after the Court ruled that they were discoverable, the Plaintiffs filed a motion seeking sanctions, which was opposed and fully briefed. Papers No. 450, 456, 458 and 473. The undersigned issued a Letter Order on September 16, 2003, Paper No. 489, which granted in part and denied in part the Plaintiffs' requests for sanctions against the Local Defendants. The substance of that order is described in greater detail below, but, in essence, it granted Rule 37(b)(2) relief to the Plaintiffs by ruling that the Local Defendants could not call as witnesses at trial former or present employees of HABC or the City of Baltimore unless they were able to demonstrate by a prepon-

---

1. The Local Defendants are the Housing Authority for Baltimore City ("HABC"), the Executive Director of HABC, and the Mayor and City Council of the City of Baltimore. The remaining defendants in this case, collectively referred to as the "Federal Defendants" in court papers, are the United States Department of Housing and Urban Development ("HUD") and the Secretary of HUD. The Plaintiffs' motion *in limine*, which

is addressed in this memorandum and order, concerns only the actions of the Local Defendants.

2. Reference to a specific "Rule" in this memorandum and order refers to the Federal Rules of Civil Procedure.

derance of evidence that there were no e-mail records generated or received by the witness that were responsive to the Plaintiffs' Rule 34 requests or, if such records did exist, that they had been produced to the Plaintiffs by a certain date.

Subsequently, as the December 1, 2003, trial date grew nearer, counsel each submitted their portions of the pretrial order, as required by Rule 16 and Local Rule 106. After reading the Local Defendants' submission, the Plaintiffs asserted that the Local Defendants were proposing to call witnesses in violation of the rulings in the September 16, 2003, Letter Order. Thus, they filed the pending motion *in limine*, Paper No. 528, to prevent those witnesses from testifying.

Thereafter, in light of a conference Plaintiffs had with Judge Garbis, the Plaintiffs supplemented their motion *in limine* in a November 18, 2003, letter to the court. In this letter, which specified the exact relief they sought, the Plaintiffs asked that the Local Defendants be precluded from calling three witnesses at trial: former HABC Commissioner Daniel Henson, former HABC official Estella Alexander, and current HABC employee Lyle Schuman. The basis for the requested relief was the failure of the Local Defendants to produce e-mail records of these witnesses as ordered in the September 16, 2003, Letter Order, as well as the belated production of e-mail records on September 25, 2003, long after the deadlines identified in the September 16, 2003, Letter Order.

Intertwined with this issue also was Plaintiffs' contention that sanctions were appropriate for the unexpected discovery by the Local Defendants of approximately 80,000 e-mail records responsive to Plaintiffs' Rule 34 requests. The discovery of these records, and therefore their production, was long after the discovery cutoff for fact discovery, and long after the deadlines imposed in the court's September 16, 2003, order.

## A. Discoverability of Electronic Records.

With this background in mind, the substance of the issues raised now may be addressed. The starting place is the discoverability of electronic records under the Federal Rules of Civil Procedure, a topic that has been the subject of a good deal of interest and a series of court opinions from other jurisdictions in the recent past. Rule 34(a) defines the word "documents" broadly, and the commentary to the 1970 changes to the Federal Rules of Civil Procedure makes it clear that a request to produce documents or records includes electronically stored information. 48 F.R.D. 487, 527 ("The inclusive description of 'documents' is revised to accord with changing technology. It makes clear that Rule 34 applies to electronic data compilations from which information can be obtained only with the use of detection devices."). Courts similarly have held that e-mail and other electronically stored information is subject to the disclosure requirements of Rule 26(a)(1), as well as discovery by a Rule 34 document production request. *Antioch Co. v. Scrapbook Borders,* 210 F.R.D. 645, 652 (D.Minn.2002); *In Re Bristol–Myers Squibb Securities Litigation,* 205 F.R.D. 437, 441–42 (D.N.J.2002); *Rowe Entertainment, Inc. v. The William Morris Agency, Inc.,* 205 F.R.D. 421, 428 (S.D.N.Y.2002); *Playboy Enterprises Inc. v. Welles,* 60 F.Supp.2d 1050, 1053 (S.D.Cal.1999); *Daewoo Electronics Co. v. United States,* 650 F.Supp. 1003 (Ct. of Internat'l Trade, 1986); *Bills v. Kennecott Corp.,* 108 F.R.D. 459, 461 (D.Utah 1985).

Courts also have recognized, however, that requests to discover electronically stored information do not have the same impact on the receiving party as do those requests for "hard copy" records. For example, the scope of what is included in the phrase "electronic records" can be enormous, encompassing voice mail, e-mail, deleted e-mail, data files, program files, back-up files, archival tapes, temporary files, system history files, web site information in textual, graphical or audio format, web site files, cache files, "cookies" and other electronically stored information. *Kleiner v. Burns,* 2000 WL 1909470 (D.Kan.2000). According to one study, "93% of all information generated during 1999 was generated in digital form, on computers. Only 7% of information originated in other media, such as paper." *In Re Bristol–Myers Squibb Securities Litigation,* 205 F.R.D. at 440 n. 2. Obviously, the burden and cost associated with searching for all electronic records responsive to a broadly-

worded Rule 34 document request can be substantial. As one court observed:

> [c]omputer files, including e mails, are discoverable.... However, the Court is not persuaded by the plaintiff's attempt to equate traditional paper-based discovery with the discovery of e-mail files. Several commentators have noted important differences between the two.... Chief among these differences is the sheer volume of electronic information. E-mails have replaced other forms of communication besides just paper-based communication. Many informal messages that were previously relayed by telephone or at the water cooler are now sent via email. Additionally, computers have the ability to capture several copies (or drafts) of the same e-mail, thus multiplying the volume of documents. All of these e-mails must be scanned for both relevance and privilege. Also, unlike most paper-based discovery, archived e-mails typically lack a coherent filing system. Moreover, dated archival systems commonly store information on magnetic tapes which have become obsolete. Thus, parties incur additional costs in translating the data from the tape into useable form.

*Byers v. Illinois State Police*, 2002 WL 1264004 at \*10 (N.D.Ill. June 3, 2002).

Additionally, since "deleting" electronic records does not actually result in their instantaneous erasure, but rather simply designates the file as "not used," thereby enabling the computer to write over it, *Zubulake v. UBS Warburg LLC*, 2003 WL 21087136 at \*10 (S.D.N.Y. May, 13, 2003) ("*Zubulake I*"), courts have ruled that Rule 34 requests seeking "deleted" electronic records are permissible. *See, e.g., Antioch Co. v. Scrapbook Borders, Inc.*, 210 F.R.D. 645, 652 (D.Minn.2002) (deleted computer records, including e-mail are discoverable); *Simon Property Group L.P. v. mySimon, Inc.*, 194 F.R.D. 639, 640 (S.D.N.Y.2000) (deleted computer records and e-mail discoverable); *Playboy Enterprises v. Welles*, 60 F.Supp.2d at 1053 (allowing discovery of computer hard drive to obtain deleted e-mail). Thus, searching for deleted electronic records can be particularly time consuming and expensive given the number of storage locations that may have to be checked (e.g., desk-top computers, laptops, PDA's, employee home computers, back-up and archival data, and systems files, for instance), coupled with the possible need to use special search methods to locate deleted files.

■ Because of the possible burden and expense associated with broad discovery of electronic records, courts have acknowledged the need to employ the Rule 26(b)(2) cost-benefit balancing factors to determine just how much discovery of electronic records is appropriate in any given case, and which party should bear the cost associated with the production—the requesting party or the producing party. In this regard, it is clear that, ordinarily, the presumption is that the producing party should bear the cost of responding to properly initiated discovery requests. *Oppenheimer Fund Inc. v. Sanders*, 437 U.S. 340, 358, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978) (the party responding to a discovery request ordinarily bears the expense associated with doing so); *Murphy Oil USA v. Fluor Daniel*, 2002 WL 246439 (E.D.La. February 19, 2002) (the presumption is that the producing party must bear the expense of complying with discovery requests, subject to obtaining a protective order under Rule 26(c)).

However, given the minimal threshold requirements of Rule 26(b)(1) for the discoverability of information (a requesting party is entitled to seek discovery of non-privileged information "relevant" to the claims and defenses raised in the pleadings), and the potentially enormous task of searching for all relevant and unprivileged electronic records, courts have attempted to fashion reasonable limits that will serve the legitimate needs of the requesting party for information, without unfair burden or expense to the producing party. The precise formulas used have varied.

In *McPeek v. Ashcroft*, 202 F.R.D. 31, (D.D.C.2001), for example, the court adopted a "marginal utility" analysis to determine which party was required to pay the cost of expansive discovery of electronic records. Under this approach, the court must assess the likelihood that the source to be searched will produce information that is relevant to a

claim or defense. The greater the likelihood that it will, the fairer it is to require the producing party to bear the expense and *vice versa*. In *Rowe Entertainment v. The William Morris Agency, Inc.* 205 F.R.D. 421 (S.D.N.Y.2002), the court adopted an eight-factor test[3] to accomplish this task, which has been much cited. Not all courts have agreed with the approach used in *Rowe* because it has been perceived as permitting too easily the shifting of the expense of production from the producing party to the requesting party. Thus, in *Zubulake v. UBS Warburg, LLC,* 216 F.R.D. 280 (S.D.N.Y.2003) (*"Zubulake III"*), the court crafted an alternative seven-factor test to determine which party should bear the production burden.[4]

In addition to the tests fashioned by these courts, it also can be argued with some force that the Rule 26(b)(2) balancing factors are all that is needed to allow a court to reach a fair result when considering the scope of discovery of electronic records. Rule 26(b)(2) requires a court, *sua sponte*, or upon receipt of a Rule 26(c) motion, to evaluate the costs and benefits associated with a potentially burdensome discovery request. The rule identifies the following factors to be considered: whether the discovery sought is unreasonably cumulative or duplicative; whether the information sought is obtainable from some other more convenient, less burdensome or inexpensive source; whether the party seeking the information already has had adequate opportunity to obtain the information; and whether the burden or expense of the proposed discovery outweighs its likely benefit, taking into consideration the following: the needs of the case, the amount in controversy, the resources of the parties, the importance of the issues at stake in the litigation and of the discovery sought to the resolution of the issues.

Regardless of which test is used, the most important ingredient for the analytical process to produce a fair result is a particularization of the facts to support any challenge to discovery of electronic records. Conclusory or factually unsupported assertions by counsel that the discovery of electronic materials should be denied because of burden or expense can be expected to fail. *See, e.g., St. Paul Reinsurance Co., Ltd. v. Commercial Financial Corp.,* 198 F.R.D. 508, 511–12 (N.D.Iowa 2000) (citing numerous cases that hold that a party resisting discovery bears the burden of demonstrating lack of relevance, burden or excessive expense, and that generalized or conclusory allegations are insufficient. Instead, a particularized showing, by affidavit or similar submission is required to present facts supporting the challenge); *Marens v. Carrabba's Italian Grill, Inc.,* 196 F.R.D. 35, 38 (D.Md.2000) (a party that objects to discovery requests on the grounds of burden or expense has an affirmative duty to particularize the basis of the objections, failing to do so waives the objection); *Coker v. Duke & Co.,* 177 F.R.D. 682, 686 (M.D.Ala. 1998); *Jackson v. Montgomery Ward & Co.,* 173 F.R.D. 524, 528–29 (D.Nev.1997); *Kelling v. Bridgestone/Firestone, Inc.,* 157 F.R.D. 496, 497 (D.Kan.1994); *Eureka Fin. Corp. v. Hartford Accident and Indemnity Co.,* 136 F.R.D. 179, 182–83 (E.D.Ca.1991).

The rationale for this requirement is obvious. Under Rules 26(b)(2) and 26(c), a court

---

**3.** The eight factors include:

> (1) the specificity of the discovery requests; (2) the likelihood of discovering critical information; (3) the availability of such information from other sources; (4) the purposes for which the responding party maintains the requested data; (5) the relative benefit to the parties of obtaining the information; (6) the total cost associated with production; (7) the relative ability of each party to control and its incentive to do so; and (8) the resources available to each party.

*Rowe Entertainment, Inc. v. The William Morris Agency,* 205 F.R.D. at 429.

**4.** The seven factors are:

> 1. The extent to which the request is specifically tailored to discover relevant information;
> 2. The availability of such information from other sources;
> 3. The total cost of production, compared to the amount in controversy;
> 4. The total cost of production, compared to the resources available to each party;
> 5. The relative ability of each party to control costs and its incentive to do so;
> 6. The importance of the issues at stake in the litigation; and
> 7. The relative benefits to the parties of obtaining the information.

*Zubulake v. UBS Warburg LLC,* 216 F.R.D. at 284.

is provided abundant resources to tailor discovery requests to avoid unfair burden or expense and yet assure fair disclosure of important information. The options available are limited only by the court's own imagination and the quality and quantity of the factual information provided by the parties to be used by the court in evaluating the Rule 26(b)(2) factors. The court can, for example, shift the cost, in whole or part, of burdensome and expensive Rule 34 discovery to the requesting party; it can limit the number of hours required by the producing party to search for electronic records; or it can restrict the sources that must be checked. It can delay production of electronic records in response to a Rule 34 request until after the deposition of information and technology personnel of the producing party, who can testify in detail as to the systems in place, as well as to the storage and retention of electronic records, enabling more focused and less costly discovery. A court also can require the parties to identify experts to assist in structuring a search for existing and deleted electronic data and retain such an expert on behalf of the court. But it can do none of these things in a factual vacuum, and *ipse dixit* assertions by counsel that requested discovery of electronic records is overbroad, burdensome or prohibitively expensive provide no help at all to the court.

In this case, the Local Defendants were cautioned by the court that any objection to producing the electronic records sought by the Plaintiffs would have to be particularized. Paper No. 450, Exh. 5 at 39–40 (transcript of February 13, 2003 hearing); Paper No. 417 at 2 (June 18, 2003, Letter Order stating "with respect to the e-mail issue, the Local Defendants are cautioned that an unparticularized claim of burden associated with searching for and producing the requested e-mails by searching the back up files will not prevail.... A properly particularized showing of burden must be established by affidavit that identifies evidentiary facts to support the claims of unfair burden or expense."). Despite this warning, Local Defendants failed to provide affidavits, deposition excerpts or similarly detailed information in opposition to the Plaintiffs' motions to obtain discovery of electronic records and subse-

quent motion for sanctions. Paper No. 489 at 1–2 (September 16, 2003, Letter Order). Such a failure to provide this information prevented the court from having available the information needed to analyze the Rule 26(b)(2) cost-benefit factors, and, predictably, resulted in rulings that the Plaintiffs' motions were meritorious.

### B. The Duty to Preserve Electronic Records.

The Local Defendants also argued that they should not be sanctioned for having destroyed or otherwise failed to preserve electronic records during the pendency of this case, asserting that the Plaintiffs had a duty to seek a preservation order from the court, which they failed to do. The Local Defendants reasoned that, despite the Plaintiffs' serial Rule 34 requests clearly seeking electronic records, they were justified in deleting or failing to maintain the e-mail records of departing HABC and City of Baltimore housing officials whose employment ended during the pendency of this suit because the Plaintiffs failed to seek an order from the court directing the preservation of the electronic records. Paper No. 458 at 4–6 (Local Defendants' Opposition to Plaintiffs' Recommendation Regarding Production of Local Defendants' E-mail). This argument is without merit.

■ In *Silvestri v. General Motors Corp.*, 271 F.3d 583 (4th Cir.2001), the Fourth Circuit Court of Appeals stated:

> The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation.... If a party cannot fulfill this duty to preserve because he does not own or control the evidence, he still has an obligation to give the opposing party notice of access to the evidence or of the possible destruction of the evidence if the party anticipates litigation involving that evidence.

*Id.* at 591 (internal citations omitted). *See also Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d 423, 436 (2d Cir.2001); *Kronisch v. United States,* 150 F.3d 112, 126 (2d Cir.

1998); and American Bar Association Civil Discovery Standards, August 1999, Standard No. 10 "Preservation of Documents" ("When a lawyer who has been retained to handle a matter learns that litigation is probable or has been commenced, the lawyer should inform the client of its duty to preserve potentially relevant documents and of the possible consequences for failing to do so."). While a litigant certainly may request that an adversary agree to preserve electronic records during the pendency of a case,[5] or even seek a court order directing that this happen, it is not required, and a failure to do so does not vitiate the independent obligation of an adverse party to preserve such information.

■ In *Zubulake v. UBS Warburg LLC*, 2003 WL 22410619 (S.D.N.Y. October 22, 2003) ("*Zubulake IV*"), the court analyzed the duty to preserve electronically stored materials and affirmed that the duty is triggered "when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Id.* at *2. More important, though, the court gave a helpful definition to the scope of what the duty to preserve encompasses:

> Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a "litigation hold" to ensure the preservation of relevant documents. As a general rule, that litigation hold does not apply to inaccessible backup tapes (*e.g.*, those typically maintained solely for the purpose of disaster recovery), which may continue to be recycled on the schedule set forth in the company's policy. On the other hand, if backup tapes are accessible (i.e. actively used for information retrieval), then such tapes would likely be subject to the ligation hold.

*Id.* at *4.

Among the electronic records subject to the "litigation hold" are those generated or maintained by the "key players" in the case.

*Id.* at *3. Clearly, in this case, former HABC Commissioner Daniel Henson and former HABC employee Estella Alexander would qualify as "key players" whose e-mail records should have been preserved by the Local Defendants, regardless of whether the Plaintiffs asked for a preservation order or not. The same is true for those of Lyle Schumann, the current deputy to the HABC Commissioner.

## C. Spoilation of Evidence and the Adverse Inference Instruction.

The failure to preserve electronic or other records, once the duty to do so has been triggered, raises the issue of spoliation of evidence and its consequences. "Spoliation refers to the destruction or material alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.... The right to impose sanctions for spoliation arises from a court's inherent power to control the judicial process and litigation, but the power is limited to that necessary to redress conduct 'which abuses the judicial process.'" *Silvestri v. General Motors Corp.*, 271 F.3d at 590 (internal citations omitted).

■ One sanction that courts have imposed pursuant to their inherent authority upon finding that spoliation of evidence has occurred is to give an adverse inference instruction to the jury. *Residential Funding Corporation v. Degeorge Financial Corp.*, 306 F.3d 99, 108 (2d Cir.2002); *Zubulake IV*, 2003 WL 22410619 at *6. This sanction, however, is not to be given lightly. As the *Zubulake* court stated:

> In practice, an adverse inference instruction often ends the litigation—it is too difficult a hurdle for the spoliator to overcome. The *in terrorem* effect of an adverse inference is obvious. When a jury is instructed that it may "infer that the party who destroyed potentially relevant evi-

---

5. For example, the *Civil Litigation Management Manual of the Judicial Conference of the United States*, Committee on Court Administration and Case Management (2001 edition) suggests that courts handling cases involving issues related to the discovery of electronic information consider the following procedures to avoid loss or destruction of electronic records: ask the parties voluntarily to agree on preservation measures and, if they refuse, to issue a "freeze order." *Id.* at 36. *See also Antioch Co. v. Scrapbook Borders, Inc.*, 210 F.R.D. at 649.

dence did so out of a realization that the [evidence was] unfavorable," the party suffering this instruction will be hard-pressed to prevail on the merits. *Zubulake IV*, 2003 WL 22410619 at *5. Accordingly, because it is an extreme sanction, three things must be shown to warrant an adverse inference instruction for spoliation of evidence: (1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a "culpable state of mind;" and (3) the evidence that was destroyed or altered was "relevant" to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defenses of the party that sought it. *Residential Funding v. Degeorge Financial Corp.*, 306 F.3d at 107–8; *Zubulake IV*, 2003 WL 22410619 at *6.

In *Residential Funding, supra,* the court clarified that there were three possible states of mind that would satisfy the culpability requirement: bad faith/knowing destruction; gross negligence, and ordinary negligence. 306 F.3d at 108; *see also Zubulake IV*, 2003 WL 22410619 at *6. The more culpable the state of mind, the easier it is for the party seeking a spoliation adverse inference instruction to demonstrate the third element— relevance. "When evidence is destroyed in bad faith (i.e. intentionally or willfully), that fact alone is sufficient to demonstrate relevance. By contrast, when the destruction is negligent, relevance must be proven by the party seeking the sanctions." *Zubulake IV*, 2003 WL 22410619 at *6, *Residential Funding v. Degeorge Financial Corp.*, 306 F.3d at 108–09.[6]

As this court noted in its Letter Order of September 16, 2003, Paper No. 489, the Local Defendants took many positions regarding the existence or non-existence of e-mail. Initially, the Local Defendants claimed that the e-mail records sought by the Plaintiffs did not exist because they had been deleted or otherwise were unavailable; at the same time, they contended that some e-mail records had been located and had been produced. Subsequently, and as trial was rapidly approaching, however, the Local Defendants acknowledged that an estimated 80,000 e-mail records of former HABC personnel had been located, contradicting their prior representations to the Plaintiffs and the court regarding the non-existence of most of these records and the completeness of the prior production of the limited e-mail records that had been found. Paper No. 466 (Local Defendants' Counsel's August 25, 2003, letter to the court). Because of these contradictory assertions, and for other reasons stated in the September 16, 2003, Letter Order, Paper No. 489, the court concluded that the Local Defendants had violated the earlier orders of this court to produce electronic records, and that Rule 37(b) sanctions were justified because the noncompliance by the Local Defendants was not substantially justified and also was prejudicial to the Plaintiffs. *Id.* at 2. As a sanction, the court ordered the following:

1. Former HABC/City of Baltimore ("City") Personnel:

At trial, the Local Defendants will not be permitted to call as witnesses any former HABC/City personnel to testify with respect to subject matters that fall within the scope of any of Plaintiffs' Rule 34 requests that sought production of E mail communications, UNLESS the Local Defendants first demonstrate, by a preponderance of evidence, that:(a) no responsive E mail communications were in the possession, custody or control of the Local Defendants *as of the date of the serving of the Rule 34 request;* or (b) that, if such documents did exist, they were produced to the Plaintiffs on or before April 1, 2003, or otherwise non-discoverable.

2. Present HABC/City Personnel: Same ruling as No. 1 above, provided the cutoff for production is September 10, 2003, and further provided that the production was

---

6. Although the case did not involve the destruction of electronic records, the Fourth Circuit has addressed the issue of spoliation and likewise concluded that the party's degree of culpability will determine the extent of the adverse inference, if any, to be drawn. *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir.1995).

made in a manner that organized the Email communications by category of document requested by the Plaintiffs, as opposed to a voluminous production of E mail communications that co-mingles responsive communications with non-responsive communications.

3. On or before September 26, 2003, Local Defendants will produce E mail Communications responsive to the request listed in Paper no. 450, Plaintiff's Memorandum, at p. 8,paragraph 3, provided that the production is made in the same manner as described in paragraph 2, above. A failure to comply with this order may subject the Local Defendants to further sanctions under Rule 37(b)(2).

4. The above order is without prejudice to the Federal Defendants, to the extent that they attempt to call as witnesses at trial any present or former HABC/City personnel that are covered by this order, provided that the Federal Defendants properly responded to any of the Plaintiffs' discovery requests that sought the identity of persons that may have relevant information relating to the issues in this case, and the present or former HABC/City employee was identified by the Federal Defendants.

Paper No. 489 at 2.

The court revisited these sanctions when Plaintiffs filed the pending motion *in limine* to preclude the Local Defendants from offering testimony at trial by former and present HABC/City personnel and for their failure to comply with this court's prior discovery orders relating to the production of e-mail records. Following a conference with Judge Garbis, in which the issues were narrowed to those discussed in this order, counsel for the Plaintiffs and the Local Defendants submitted supplemental letter memoranda to me, and a hearing was held on November 24, 2003, at which time I revised the sanctions previously ordered in Paper No. 489 and informed counsel that I would subsequently issue a written memorandum and order to explain in more detail the rationale for my amended ruling imposing sanctions.

### D. Sanctions.

Once a court makes the threshold determination under Rule 37(b) that a party has failed to obey a prior discovery order issued by it, then it must determine what sanctions are warranted. Rule 37(b)(2) provides a non-exclusive list of possible sanctions,[7] which include ordering that certain facts be taken as established at trial; that the disobedient party may not oppose adverse claims or support its own defenses at trial; that pleadings may be stricken, the action dismissed, or a default judgment issued against the disobedient party; and that an order treating the failure to obey the prior order as a contempt of court be issued. As can be seen, the potential remedies may be draconian, to the point of being case determinative.

---

7. Rule 37(b)(2) states in pertinent part:
*Sanctions by Court in Which Action is Pending.* If a party ... fails to obey an order to provide or permit discovery... the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
(A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;
(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence;
(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;
(D) In lieu of any of the foregoing orders or in addition thereto, an order treating as contempt of court the failure to obey an orders except an order to submit to a physical or mental examination;
(E) Where a party has failed to comply with an order under Rule 35(a) requiring that party to produce another for examination, such orders are listed in paragraphs (A), (B), and (C) of this subdivision, unless the party failing to comply shows that the party is unable to produce such person for examination.
In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

Because of the possible impact of the imposition of Rule 37(b)(2) sanctions, trial courts do not enjoy unfettered discretion in imposing them. In *Southern States Rack and Fixture, Inc. v. Sherwin Williams* ("*Southern States*"), 318 F.3d 592 (4th Cir. 2003), for example, the Fourth Circuit identified a five-factor test to guide trial courts in determining appropriate sanctions to impose under Rule 37:[8] (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the discovery; and (5) the explanation of the non-disclosing party for its failure to provide the discovery. *Id.* at 597. Each of these factors militates in favor of imposing Rule 37(b)(2) sanctions against the Local Defendants.

First, the Plaintiffs certainly were surprised by the Local Defendants' announcement, long after the discovery cutoff deadline, that it had discovered 80,000 e-mail records from past and present HABC and City personnel. Indeed, counsel for the Local Defendants herself was surprised, not to mention chagrined, by this discovery, having repeatedly told Plaintiffs and the court that e-mail records either did not exist or already had been produced. Second, given the enormous volume of e-mail records involved, the fact that discovery had been closed for months, (thereby preventing the Plaintiffs

from having the opportunity to use the e-mail records during deposition of the fact witnesses), and that the trial was set to begin on December 1, 2003, there was no effective way to cure the surprise.[9] Similarly, given the sheer number of e-mail records—80,000—allowing them to be used by the Local Defendants, or even to permit the testimony of the witnesses who drafted the e-mails and/or received them, would have the potential for disrupting the trial substantially. Plaintiffs could be expected to request a continuance in the case to review the e-mails and to determine how they affected the possible testimony of the authors and recipients. Issues undoubtedly would arise regarding whether the fact witnesses of the Local Defendants refreshed their recollection based on the e-mails. Dealing with these issues alone would have had a substantially disruptive effect on the trial.

Fourth, because the e-mail records were produced so late, and Plaintiffs had no opportunity to review them, digest them, and assess their impact on the case, it is not possible to determine their importance with certainty. Nonetheless, given the volume of e-mails, the importance of their authors and recipients as potential fact witnesses, and comparing them to the substantive content of e-mails that were in fact produced during discovery, it is reasonable to conclude that the 80,000 e-mail records related to important issues in the case.[10] Finally, as the

---

8. The *Southern States* case involved an order issued by the trial court under Rule 37(c), for failure to make required expert disclosures, not Rule 37(b), which governs sanctions for, *inter alia*, failure to obey a prior court order pertaining to discovery, and which, on its face, gives the trial court greater discretion in the selection of sanctions than Rule 37(c). *Southern States*, 318 F.3d at 597. However, because a violation of Rule 37(c) permits a court to impose most of the very serious sanctions listed at Rule 37(b)(2), the court's analysis in *Southern States* is helpful in addressing requests for sanctions under Rule 37(b) and provides a useful measure to insure against unwarranted imposition of sanctions that may be so severe as to end, or severely damage, a party's ability to present its case at trial. Thus, without deciding whether the *Southern States* factors must be used under Rule 37(b), I conclude that they are helpful to consider, and, accordingly, will do so.

9. It must be remembered that this case was filed in January 1995 and has been aggressively litigated for nearly nine years. It involves allegations of purposeful discrimination by the defendants in connection with the operation of public housing in Baltimore, spanning three quarters of a century. The docket sheet reflects more than 550 entries and is in excess of seventy pages in length. A bench trial date of December 1, 2003, was specially set with trial scheduled to take a full month. Further, the court gave unambiguous signals to counsel that the trial date would not be postponed. Thus, the disclosure of 80,000 e-mail records approximately ninety days before trial in a case of this magnitude, and long after all fact discovery was over, constituted a surprise that could not have been cured without postponing the trial date and reopening discovery.

10. *See, e.g.,* Paper No. 489 at 2, which is the court's Letter Order discussing the content of e-mail records that had been produced and con-

court noted in its September 16, 2003, order, no explanation was given by the Local Defendants as to why the 80,000 e-mails were not produced earlier. *See* Paper No. 489 at 1 n. 2. Indeed, an August 25, 2003, letter from counsel for the Local Defendants to the court advising it of the discovery of the 80,000 e-mail records five days earlier is devoid of any explanation regarding when the e-mails were discovered or why they were not earlier discovered. Similarly, the February 25, 2003, deposition of Amy Wilkinson, the self-described conduit between counsel for the Local Defendants and the Local Defendants themselves regarding responses to Plaintiffs Rule 34 requests indicates that no specific request ever was made to those searching for responsive records to look for e-mail records. Paper No. 450, Exh. 6 at 134–137 (deposition transcript of Amy Wilkinson). Thus, the court was entirely in the dark about the circumstances relating to the discovery of the 80,000 e-mail records, and why they had not earlier been discovered. Accordingly, applying the five *Southern States* factors, the court clearly was within its sound discretion to impose Rule 37(b)(2) sanctions against the Local Defendants for their violations of the court's earlier orders regarding the discovery of e-mail records.

■ In the Plaintiffs' motion *in limine* regarding the non-production of e-mail records, they asked the court to prevent a series of former and present HABC/City officials from testifying, because the Local Defendants had not produced e-mail records pertaining to them within the deadlines identified in the court's September 16, 2003, letter order, Paper No. 489. Following a conference with Judge Garbis, the Plaintiffs narrowed the scope of their request for a preclusion order to the following former and present HABC representatives: Former Housing Commissioner Daniel Henson, former HABC official Estella Alexander, and present HABC official Lyle Schumann. In their opposition, the Local Defendants disputed the accuracy of the Plaintiffs' factual assertions that e-mail records pertaining to these individuals had not been produced within the times stated

in the September 16, 2003, letter order. To demonstrate this, the Local Defendants produced a litigation box full of e-mail records that they contended demonstrated that the September 16, 2003, deadlines had been met. Unfortunately, the Local Defendants failed to demonstrate exactly how the box of e-mail records in fact had been produced timely, and the emergency scheduling of the hearing of the motion, on the next-to-last work day before trial was set to commence, did not leave sufficient time to hold an evidentiary hearing to determine which position was correct.

Because the September 16, 2003, letter order placed the burden squarely on the Local Defendants to demonstrate compliance with the deadlines stated therein, their failure to do so means that they were unable to meet the foundational showing imposed in the court's order, and, therefore, by its terms, Henson, Alexander and Lyle would not be permitted to testify.

As noted during the hearing on this motion and from a review of the pretrial order, Henson, Alexander and Schumann were important witnesses to the Local Defendants. Indeed, it would not be an exaggeration to say that the former Commissioner, Daniel Henson, was one of the most important fact witnesses in the litigation. For the court to adhere to the September 16, 2003, letter order and totally preclude testimony by these three witnesses during the Local Defendants' case would deprive them of the opportunity to defend themselves in such a significant way, that it could prove fatal to their ability to prove their defenses. Against the somewhat murky factual backdrop of the dispute regarding the production of e-mail records, the court was not willing to do so.

Accordingly, the Rule 37(b)(2) sanctions were modified by: (1) precluding the Local Defendants from introducing into evidence in their case any of the 80,000 e-mail records that were "discovered" during the last minute; (2) ordering that counsel for the Local Defendants were forbidden to use any of these e-mail records to prepare any of their witnesses for testimony at trial, and that at

cluding that they related to important issues in the case.

trial counsel for the Local Defendants were forbidden from attempting to refresh the recollection of any of their witnesses by using any of the 80,000 undisclosed e-mail records; (3) ordering that the Plaintiffs were permitted to use any of the 80,000 e-mail records during their case and in cross-examining any of the Local Defendants witnesses, (4) ordering that, if the Plaintiffs incurred any additional expense and attorney's fees in connection with reviewing the 80,000 records and analyzing them for possible use at trial, this could be recovered from the Local Defendants upon further motion to the court; and finally (5) ordering that if, at trial, the evidence revealed additional information regarding the non-production of the e-mail records to clear up the many uncertainties that existed as of the resolution of this issue, that the Plaintiffs were free to make a motion to the court that the failure to produce e-mail records as ordered by this court constituted a contempt of court, under Rule 37(b)(2)(D).

Additionally, from the factual record before me, the court readily concluded that the Local Defendants were under a duty to preserve e-mail records at least as early as the date this lawsuit was filed and that they failed to comply with that duty. Further, from the samples of e-mail records that were submitted as exhibits during motions practice on this issue, it is clear that the e-mail records that were not produced were relevant to the Plaintiffs claims and that the failure to produce the e-mail records as ordered was done with, at a minimum, a negligent state of mind. An adverse inference instruction, however, was not appropriate for the simple fact that this is a bench trial, and Judge Garbis will be aware of these proceedings and certainly will be able to draw reasonable inferences from the Local Defendants' failure to preserve and produce e-mail records as ordered.