**Rose Ure MEZU, Plaintiff,**

v.

**MORGAN STATE UNIVERSITY, et al., Defendants.**

Civil Action No. WMN–09–2855.

United States District Court, D. Maryland.

April 1, 2011.

Chinyere Valerie Ibe, Law Offices of C. Valerie Ibe, a Professional Law Corporation, West Hills, CA, John Michael Singleton, Willig Williams Davidson and Singleton, Owings Mills, MD, for Plaintiff.

Sally Lotz Swann, State of Maryland Office of the Attorney General, Baltimore, MD, for Defendants.

### MEMORANDUM AND ORDER

PAUL W. GRIMM, United States Magistrate Judge.

This Memorandum and Order addresses Plaintiff Rose Ure Mezu's "Letter on Defendant's Refusal to Produce Documents the Court Previously Ordered Produced" ("Pl.'s Mot.") (ECF No. 101), which essen-

tially is a motion to compel production of documents; Defendant Morgan State University's Response (ECF No. 103); and Plaintiff's Reply (ECF No. 104). Although a telephone hearing was scheduled, Plaintiff's counsel requested that it be cancelled because of a legitimate family emergency. Having determined that the dispute should be resolved as quickly as possible and that the filings were amply sufficient to enable it to do so, the Court will rule without a hearing. Loc. R. 105.6. For the reasons stated below, Plaintiff's Motion is DENIED. This Memorandum and Order disposes of ECF Nos. 101, 103, and 104.

## I. BACKGROUND

This Motion comes to this Court after a long series of discovery disputes. Most recently, on January 11, 2011, this Court issued an Order, ECF No. 92 ("Order" or "Order Spreadsheet"), attempting to resolve the outstanding discovery disputes and allow this case to progress forward. However, as is clear from the most recent filings, discovery disputes continue to plague this case. The current dispute pertains to Plaintiff's requests for production of documents numbers 3, 7, 13, and 19. Pl.'s Mot. Ex. 1, ECF No. 101–1. Subject to the execution of a confidentiality order, Defendant stated that the documents were available for inspection and copying at Defense counsel's office. *Id.* The Court ordered that this response was sufficient. Order Spreadsheet 15. The Stipulated Order Regarding Confidentiality of Discovery Material and Inadvertent Disclosure of Privileged Material was submitted by the parties on February 15, 2011, ECF No. 98, and approved by the undersigned the next day, ECF No. 99. Plaintiff's counsel made clear to Defense counsel that she did not intend to inspect the documents. Rather, she wanted to have them copied and shipped to her office in California. *See*

Pl.'s Mot. 3 ("Since I could ask that all of them be copied after I inspect them, it would be no more burdensome to you to simply copy them all now."). Therefore, as the parties concede, the only issue for this Court to decide is the reasonableness of the fees for copying the documents. *See id.* at 7 ("The key issue, here, is what ... counts as a 'reasonable amount.'"); Def.'s Resp. 4 ("Thus the dispute here is limited to whether the per page rate of $0.13 per page to copy, mark confidential, and bates number is reasonable.").

The original price quote that Defense counsel gave for the copying charges was $0.25 per page with an estimate of 6000 pages, making a total of $1,500.00. Email from Swann to Ibe[1] (Mar. 1, 2011), Pl.'s Mot. Ex. 2, ECF No. 101–2. Following this price quote, Plaintiff's counsel suggested that a FedEx Kinko's could copy the same number of pages for "a little over $300." Email from Ibe to Swann (Mar. 2, 2011, 4:23 p.m.), Pl.'s Mot. Ex. 2. Defense counsel responded to Plaintiff's counsel's suggestion, noting that the documents are confidential and could not be taken out of the office for copying. Email from Swann to Ibe (Mar. 2, 2011), Pl.'s Mot. Ex. 2. Further, she explained that $0.25 per page was "the normal government rate for copying." *Id.* Plaintiff's counsel objected and proposed that a representative of Plaintiff could take the boxes to the FedEx Kinko's along with a representative for the Defendant, who could "keep an eye on the documents at all times." Email from Ibe to Swann (March 2, 2011, 10:00 p.m.), Pl.'s Mot. Ex. 2. Plaintiff's counsel also took the position that Defendant, not Plaintiff, was responsible for the costs of marking the documents as "confidential." *Id.* Defense counsel then quoted $400.00 for the copying, to be done by an outside vendor that would sign a confidentiality agreement.

---

1. Sally S. Swann, Esq. is Defense counsel, and C. Valeria Ibe, Esq. is Plaintiff's counsel.

Email from Swann to Ibe (Mar. 3, 2011), Pl.'s Mot. Ex. 2. Plaintiff's counsel agreed to the price and gave the go-ahead for the copies to be made. Email from Ibe to Swann (Mar. 4, 2011), Pl.'s Mot. Ex. 2.

Following the copying of the documents, Defense counsel informed Plaintiff's counsel that the price quote of $400.00 was an error and the actual cost of the copying was $1,179.36. Email from Swann to Ibe (Mar. 11, 2011), Pl.'s Mot. Ex. 3, ECF No. 101–3. She also explained that the cost of shipping would be $66.26. *Id.* Plaintiff's counsel then directed Defense counsel to "not continue with the copies based on this new rate of almost $2,000 you quoted," and that "Plaintiff simply cannot afford it." Email from Ibe to Swann (Mar. 11, 2011), Pl.'s Mot. Ex. 3. Plaintiff's counsel then proposed that Defense counsel "designate someone from your office who will accompany one of the plaintiff's daughters to the cheaper commercial copy store," and added, with pugnacity that is inconsistent with the cooperative approach to discovery expected by this Court,[2] "[i]f you refuse, I will take it that you have no intention whatever of producing documents. . . ." *Id.* Plaintiff's counsel, on Thursday, March 17, 2011, suggested a telephone conference call for Monday, March 21, 2011, at 12:00 p.m. Email from Ibe to Swann (Mar. 17, 2011), Pl.'s Mot. Ex. 3. On Friday, March 18, 2011, Defense counsel's assistant responded to Plaintiff's counsel's previous email, stating that Defense counsel was out of the office and would not be available on March 21, but would contact her once she returned to the office. Email from Cox to Ibe (Mar. 18, 2011), Pl.'s Mot. Ex. 3. Defense counsel's assistant also informed Plaintiff's counsel that Defense counsel was able to have the copying bill reduced to $730.08 from $1,179.36. *Id.* On Tuesday, March 22, 2011, Plaintiff filed the instant Motion.

## A. Plaintiff's Argument

As noted, Plaintiff concedes that the core issue is whether the amount Defendant is proposing for the copying of documents responsive to her request is reasonable. Pl.'s Mot. 7. She contends, without a supporting evidentiary basis, that Defendant is "seeking to charge [Plaintiff] more than she makes in a month simply to obtain documents this Court ordered [Defendant] to produce." *Id.* Further, Plaintiff argues that the "costs quoted are, in fact, four times the actual costs of copying and production," and that "[t]hese excessive quotations from defendant appear to be an attempt to avoid actually producing the documents." *Id.* After acknowledging that Plaintiff must pay a reasonable cost for copying the documents, she argues that "[t]here is, now, objective evidence of what those costs would be—about $300 at a commercial copy service," and "[y]et defendant seeks to charge several times that much at another, unidentified commercial copy service. . . ." *Id.*

Plaintiff concludes that the "only plausible reason" for such high charges is the cost associated with labeling the documents as "confidential," and "[t]his means that defendant seeks to shift costs other than those set forth in the Court's previous order." *Id.* at 7–8. Plaintiff's contention is that stamping documents "confidential" "is not photocopying, and the costs of marking documents confidential is always the burden of the party who wants the documents so marked, as it is part of the organizing and labeling that a party must

---

2. *See* Discovery Guidelines for the United States District Court for the District of Maryland, D. Md. Loc. R.App. A, Guideline 1.a (Dec. 1, 2010), http://mddb-data/ webdatapages/LocalRules/LocalRules.pdf ("The parties and counsel have an obligation to cooperate in planning and conducting discovery. . . .").

undertake in any case, irrespective of photocopying costs." *Id.* at 8 (citing *Wiginton v. C.B. Richard Ellis, Inc.*, 229 F.R.D. 568, 571–72 (N.D.Ill.2004); *Hagemeyer N. Am., Inc. v. Gateway Data Scis. Corp.*, 222 F.R.D. 594, 600 (E.D.Wis.2004); *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309 (S.D.N.Y.2003)). Plaintiff also cites *Williams v. Taser Int'l, Inc.*, No. 06–0051, 2006 WL 1835437 (N.D.Ga. June 30, 2006), to support her argument that Defendant should be responsible for the costs associated with Bates stamping and marking the documents "confidential." Pl.'s Mot. 11.

Plaintiff also argues—without having seen the documents themselves—that "the documents are not properly organized," and that "defense counsel has apparently done nothing . . . to assure [that] the documents are well-organized." Pl.'s Mot. 9. Plaintiff contends: "Federal Rule of Civil Procedure 34(b)(2)(E)(i) states clearly that [Defendant] was required to 'produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request.' " *Id.* at 10 (quoting Fed. R.Civ.P. 34(b)(2)(E)(i)). Plaintiff surmises that "a couple of boxes of papers, adding up to 5,616 pages, stacked in a conference room at the State's Attorney General's office cannot be the way the documents were originally 'kept in the ordinary course of business.' " *Id.* (quoting Fed. R.Civ.P. 34(b)(2)(E)(i)). Further, Plaintiff argues that "there is no way that [all of the documents] were kept together in a big box in the usual course of business." *Id.*

Finally, undeterred by never having seen the documents that Defendant has assembled and copied, Plaintiff speculates that Defendant is not planning on producing them as they are kept in the ordinary course of business. She, therefore, insists that Defendant must "produce [the documents] organized and labeled by request and category." *Id.* at 11. According to Plaintiff, "[t]hese costs—of organizing, labeling, and reviewing documents—must be considered part of those costs to which 'the presumption is that the producing party should bear the cost of responding to properly initiated discovery requests.' " *Id.* (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978); citing *Thompson v. U.S. Dept. of HUD*, 219 F.R.D. 93, 97 (D.Md.2003); *Atl. Purchasers, Inc. v. Aircraft Sales, Inc.*, 101 F.R.D. 779, 784 (W.D.N.C.1984)). Recognizing that the "court has discretion to shift all or part of the costs of production in the interests of justice and equity," Plaintiff argues that "[e]ven if stamping documents were somehow the same thing as copying them, it would be unjust and unreasonable to shift those costs to [Plaintiff]." *Id.* at 12.

### B. Defendant's Position

Defendant initially responds to Plaintiff's Motion by noting the procedural defects from which it suffers.[3] Def.'s Resp. 2. Defendant then briefly addresses Plaintiff's argument with respect to the organization and labeling of the documents. *Id.* Defendant points out that "the FMLA documents and personnel records are organized by category and produced as 'they are kept in the ordinary course of business.' " *Id.* (quoting Fed.R.Civ.P. 34(b)(2)(E)(i)). Defendant continues: "Since plaintiff has not inspected the re-

---

**3.** Defendant argues that "Plaintiff has failed to 'meet and confer' with defendant's counsel as required under L[oc]. R. 104.8," and "[b]y not complying with the requirements of L[oc]. R. 104, plaintiff has failed to cooperate with the defendant in resolving discovery disputes." Def.'s Resp. 2. At this time, the Court will not consider the procedural deficiencies of Plaintiff's filing as discovery has gone on far too long, and this Court instead will address the substantive issues.

sponsive documents being produced, her allegations are baseless and made in bad faith."[4]  *Id.* Finally, Defendant recognizes the actual dispute about "whether the . . . rate of $0.13 per page to copy, mark confidential, and bates number is reasonable." *Id.* at 4.  Citing a series of cases from various jurisdictions, Defendant states: "Courts have found as reasonable photocopying rates of $.25 per page, $.20 per page, $.14 per page when considering the costs to which prevailing parties are entitled."  *Id.* (citations omitted).

## II.  ANALYSIS

With this current dispute, the parties are travelling a well-worn path.  The existing discussion in *Mezu v. Morgan State University,* 269 F.R.D. 565, 575 (D.Md. 2010), is applicable:

> As the parties move forward with discovery, counsel will familiarize themselves with the document production requirements of Fed.R.Civ.P. 34.  In this regard, it is true that "the presumption is that the producing party should bear the cost of responding to properly initiated discovery requests."  *Thompson,* 219 F.R.D. at 97;  *see Oppenheimer Fund Inc. v. Sanders,* 437 U.S. 340, 358, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978) (the party responding to a discovery request ordinarily bears the expense associated with doing so).  However, this rule does not preclude the producing party from charging the requesting party a reasonable amount to photocopy the documents that it makes available for the requesting party to review, provided the requesting party has specified in the production request that it seeks production of "hard copies" of documents.

Indeed, Rule 34(a)(1) provides that a party may request that the other party "produce and permit the requesting party to inspect, copy, test, or sample" relevant documents and tangible things.  Rule 34(b)(1)(B) provides that the request "must specify a reasonable time, place, and manner for the inspection and for performing the related acts," and Rule 34(b)(2)(B) provides that the response to each item "must either state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons."  Thus, Defendant was not obligated to photocopy the documents and mail them to Plaintiff;  Defendant only was obligated to make the documents available to Plaintiff for inspection and copying.  *See* Fed.R.Civ.P. 34(a)(1).  Also, Defendant "may charge as a photocopying expense" an amount that did "not exceed the rate established by the Court for taxation of costs."  *See* Loc. R. 104.11.c. If Defendant did not want to photocopy the documents, it should have made clear to Plaintiff that the documents were available for inspection and objected to the form of production that Plaintiff requested as unreasonable. *See* Fed.R.Civ.P. 34(b)(1)(B), (b)(2)(B)-(C).  Alternatively, had Defendant made clear in its response that the documents were available for inspection and could be copied by Defendant at $0.25 per page, Plaintiff could have informed Defendant that it found the cost unreasonable.  In either case, the parties then could have conferred and agreed upon a reasonable amount or a time and place for Plaintiff to make copies at her own expense.  Experienced counsel who con-

---

4.  Gratuitous accusations of bad faith in the absence of a supporting factual basis are improper, inconsistent with the Discovery Guidelines of this Court, and invite opposing counsel to respond in kind; not all unfounded arguments are made in "bad faith." While it is appropriate for Defendant to point out where Plaintiff has argued on the basis of conjecture, not fact, to add—apparently reflexively—that this amounts to bad faith is improper.

duct discovery as the Court expects them to do not bring trivial disputes like this to the Court for resolution.

*Id.* As the parties have agreed, the current dispute is not whether Plaintiff's counsel is going to inspect the documents at Defense counsel's office (as Plaintiff's counsel has insisted that Defense counsel copy all of the requested documents and ship them to California) or who is responsible for paying the copying costs (as Plaintiff has conceded that she is responsible for paying reasonable costs for copying and shipping), but rather, the dispute centers around what is a "reasonable" cost for copying the documents.

To determine the reasonableness of the copying fees, Loc. R. 104.11.c provides:

**Limitation on Cost of Photocopying**

Unless otherwise ordered by the Court, the amount that a party or third-party witness may charge as a photocopying expense when producing documents in response to a discovery request or subpoena shall not exceed the rate established by the Court for taxation of costs.

*Id.* The United States District Court for the District of Maryland Guidelines for Bills of Costs (June 2010), www.mdd. uscourts.gov/publications/forms/BillofCosts Guidelines.pdf, states that "copy costs are taxable at the lesser of actual costs or the copy fee rates in the Court's schedule of fees, as established under 28 U.S.C. § 1914 and listed on the Court's website." The United States District Court for the District of Maryland Schedule of Fees (Feb. 2, 2011), www.mdd.uscourts.gov/ publications/forms/ScheduleofFees.pdf, lists the copy fee for paper documents at $0.50 per page. The United States Dis-

trict Court Miscellaneous Fee Schedule, www.uscourts.gov/FormsAndFee s/Fees/DistrictCourtMiscellaneousFeeSc-hedule.aspx, issued in accordance with 28 U.S.C. § 1914, states that the cost "[f]or reproducing any record or paper [is] $.50 per page."

As indicated above, the fees that Defendant may charge to Plaintiff are the "lesser of actual costs or the copy fee rates in the Court's schedule of fees [$0.50 per page]." Plainly, despite Plaintiff's protestations, the per page cost of $0.13 now sought by Defendant is well within this range. Initially, Plaintiff offered to make the copies at a rate of $0.25 per page, the "normal government rate for copying." Email from Swann to Ibe (Mar. 2, 2011), Pl.'s Mot. Ex. 2; *see also* Maryland Public Information Act Manual, Model Rules on Public Information Act, Appendix D–1.15 (11th ed. Oct. 2008) ("(a) The fee for each copy made by a photocopying machine within the Department is 25 cents per page. (b) The fee for each copy made otherwise shall be based on the actual cost of reproduction."); Md. Code Regs. (CO-MAR) 18.01.03.01(a)(4) ("no charge for the first three pages, $1.00 for four pages and 25 cents for each page beyond four."); Md.Code Regs. 12.11.02.06(E)(3)("(a) If a Department photocopy machine is used, 50 cents for each page copied; ... (f) If copying ... cannot be performed within the Department, for actual costs, established by the public or private business providing the service.").

Following the dispute, as detailed above, Defendant had the copies made by an outside vendor that was subject to a confidentiality agreement.[5] The "actual cost" for

---

**5.** Plaintiff's suggestion that Defense counsel "take the documents over to Kinko's for copying" is manifestly unreasonable. These documents, FMLA and personnel records, are not, as Plaintiff suggests, documents that need to be marked as confidential as Defendant "asked for, indeed demanded." These are

documents that are required under Maryland law to remain confidential. *See* Md. Code Ann., State Gov't § 10–616(i) ("[A] custodian shall deny inspection of a personnel record of an individual, including an application, performance rating, or scholastic achievement

this service, including copying, Bates stamping, and marking each document as confidential, was $1,179.36 for 5,616 pages (approximately $0.21 per page). Email from Swann to Ibe (Mar. 11, 2011), Pl.'s Mot. Ex. 3. According to the standards set forth above, this is well within the range of reasonable. However, in an attempt to reduce Plaintiff's cost, Defendant lowered the cost to a total of $730.08 (exactly $0.13 per page), and agreed to pay the remaining balance. Def.'s Resp. 4. This represents a 40 percent reduction to the "actual cost" of copying the requested documents.

Plaintiff confuses "actual costs" with the lowest possible price that she could find. *See* Pl.'s Reply 3 ("The actual costs of copying here have been established to be around $300. A bit of searching might even bring those costs down."). This Court need not consider the lowest possible price Plaintiff may have found, but only need consider what the "actual cost" of copying was. As discussed above, the actual cost of copying was $0.21 per page, reduced to $0.13 per page by Defendant. This is well within what this Court considers reasonable.

As for Plaintiff's argument that the costs associated with Bates stamping and marking as "confidential" should not be borne by Plaintiff, there is currently no direction within the Fourth Circuit on whether these costs should be included in the "reasonable" costs associated with copying documents for discovery production. The other circuits also provide little clarity. *Compare Nilssen v. Osram Sylvania, Inc.*, No. 01–3585, 2007 WL 257711, at *6 (N.D.Ill. Jan. 23, 2007) ("$0.05 per page is also awarded for bates stamping of the discovery-production documents."); *In re Matos*, 381 B.R. 394, 397 (M.D.Fla.2007)

("In some case Bates Stamping documents may be reasonable and taxable."); *Rockett v. Marten Transp., Ltd.*, No. 99–3957, 2002 WL 54545, at *2 (N.D.Ill. Jan. 15, 2002) ("Defendants say they spent $975.71 for copying and Bates stamping documents they produced in discovery. Those costs are reasonable and recoverable.") (citations omitted); *Athridge v. Aetna Cas. & Sur. Co.*, 184 F.R.D. 181, 199–200 (D.D.C. 1998) ("[P]laintiffs and Defendant shall share equally the cost of bates stamping."), *with Gallagher v. Gallagher*, No. 07–4196, 2010 WL 2610192, at *3 (N.D. Ill. June 24, 2010) ("The Court agrees that [the costs associated with Bates labeling of discovery documents] are not recoverable."); *Baxter Int'l, Inc. v. McGaw, Inc.*, No. 95–2723, 1998 WL 102668, at *3 (N.D.Ill. Mar. 3, 1998) ("[Bates numbering] is not a necessary cost of copying the documents....."). It is unnecessary for the Court to decide whether, as a general matter, costs for Bates stamping and marking documents as "confidential" are or are not recoverable. Even assuming that the cost of Bates stamping and marking as confidential was included in the actual cost of $0.21 per page, the reduction by 40 percent to the manifestly reasonable per page cost of $0.13 is more than sufficient to offset the costs associated with Bates stamping and marking as confidential. As for Plaintiff's contention that, even at the reduced rate of $0.13 per page, this is more than she can afford, there is no evidentiary support for this, only counsel's conclusory assertion.

## III. CONCLUSION

Accordingly, it hereby ORDERED that Plaintiff Rose Ure Mezu's Letter on Defendant's Refusal to Produce Documents

---

information."); *id.* § 10–617(b)(1) ("[A] custodian shall deny inspection of the part of a public record that contains ... medical or

psychological information about an individual....").

the Court Previously Ordered Produced (ECF No. 101) is DENIED. It is further ORDERED that, should Plaintiff seek to review the documents at issue, Plaintiff must pay to Defendant $730.08 plus reasonable shipping costs.