**Ina SAMPSON, Plaintiff,**

v.

**CITY OF CAMBRIDGE, MARYLAND, Defendant.**

**No. WDQ–06–1819.**

United States District Court,
D. Maryland.

April 30, 2008.

---

Robert Scott Oswald, Nicholas Wyckoff Woodfield, The Employment Law Group, PC, Washington, DC, for Plaintiff.

Kevin Bock Karpinski, Karpinski Colaresi and Karp PA, Baltimore, MD, for Defendant.

## MEMORANDUM OPINION

BETH P. GESNER, United States Magistrate Judge.

This case has been referred to me for the

resolution of discovery disputes.[1] 28 U.S.C. § 636. Currently pending[2] are: (1) Plaintiff's Motion to Sanction Defendant for Spoliation of Evidence and to Grant Default Judgment or Adverse Jury Instruction ("First Motion for Sanctions") with supporting Memorandum of Law, plaintiff's Supplement, defendant's Response in Opposition, and plaintiff's Reply (Paper Nos. 62, 63, 85, 114, 115); and (2) Plaintiff's Motion to Sanction Defendant for Suppression of Relevant Evidence ("Second Motion for Sanctions"), defendant's Response in Opposition, plaintiff's Reply, and defendant's Surreply.[3] (Paper Nos. 116, 119, 121, 123 Attach. 1). The court held a motions hearing on March 4, 2008. Based on the entire record in this case, including the motions hearing, the court denies plaintiff's First and Second Motions for Sanctions.

## I. *Factual Background*

■ In this action, plaintiff Ina Sampson ("plaintiff") asserts claims under Title VII of the Civil Rights Act of 1964 alleging race discrimination and discrimination under the Americans with Disabilities Act ("ADA") based on defendant City of Cambridge's ("defendant") failure to promote her to the position of Assistant Director of the Department of Public Works ("DPW") and for retaliation. (Paper No. 70 at 1–2.) Plaintiff alleges that David Pritchett ("Pritchett"), the

then Director of the DPW, exhibited a discriminatory animus against plaintiff on the basis of her race and medical condition, which affected his decision not to promote her. (Paper No. 81 at 13–14, 23.) In response, defendant argues that it was Cleveland Rippons, Mayor of the City of Cambridge, Maryland, not Pritchett, who was responsible for the decision whether to promote plaintiff, and plaintiff has not produced any evidence suggesting that Mayor Rippons had any discriminatory animus against plaintiff.[4] (Paper No. 70 at 27–28.)

### A. *Allegations of Spoliation*

On June 26, 2006, plaintiff's counsel sent an electronic evidence preservation letter to defendant, stating that "all electronic and non-electronic evidence related to this complaint must be preserved." (Paper No. 63, Ex. 1 at 1.) Plaintiff then initiated suit on August 15, 2006. (Paper No. 63 at 3 n. 1.) According to deposition testimony, defendant had no formal process for preserving electronic data in anticipation of litigation and no formal means to back up email communications. (Paper No. 63 at 5.) There is no evidence that defendant implemented such a process after receiving the electronic preservation letter. Defendant's Geographic Information Systems Specialist, Dale Price, testified that he instructed the two people he

---

1. Although Judge Quarles referred the two motions discussed in this Memorandum Opinion for a Report and Recommendation ("R & R") (Paper No. 122), an R & R is not necessary as the manner in which the motions are resolved herein is not case dispositive.

2. In addition to the two motions discussed here, there is also pending plaintiff's Motion in Limine to Exclude Evidence Regarding Plaintiff's Unsatisfactory Job Performance (Paper No. 79), which will be addressed in a separate order.

3. Defendant filed a Motion for Leave to File a Surreply to plaintiff's Second Motion for Sanctions, which is ripe for my consideration (Paper Nos. 123, 124, 125). In support of its Motion, defendant maintains that plaintiff's Reply to the Second Motion for Sanctions "asserted new arguments" and "attached documents not previously discussed or relied upon." (Paper No. 125 at 1.) The Court agrees and grants defendant's Motion for Leave to File a Surreply (Paper No. 123).

4. Defendant relies on the standard from *Hill v. Lockheed Martin Logistics Mgmt., Inc.,* 354 F.3d

277 (4th Cir.2004) to argue that, in order to hold defendant liable for discrimination, plaintiff must present evidence that the actual decisionmaker had a discriminatory animus that affected the adverse employment decision. Evidence that the actual decisionmaker's influential subordinate had a discriminatory animus is not sufficient to establish the defendant's liability for employment discrimination. *Hill,* 354 F.3d at 291. The Court is of the view, however, that regardless of whether Pritchett or Mayor Rippons was the actual decisionmaker under the *Hill* standard, Pritchett's emails and other documents could be relevant for the purposes of discovery. *See Sawicki v. Morgan State Univ.,* WMN–03–1600, 2005 WL 5351448, at *11 (D.Md. Aug. 2, 2005) (holding that *Hill* required the court to consider whether an influential subordinate's actions and omissions raised a reasonable inference of discrimination, considering the great frequency with which the actual decisionmaker followed the subordinate's recommendations regarding promotion decisions).

believed to be most relevant to the case, Pritchett and Oden Wheeler, defendant's Risk Manager, not to delete their emails. (Paper No. 63 at 5–6.)

At the December 7, 2006 deposition of David Pritchett, plaintiff asked defendant to search the DPW employees' computer hard drives for relevant evidence, including emails, using the terms "Ina Sampson," "discrimination," "race," "disability," and "grievance." (Paper No. 114 at 2–3.) Price searched the individual DPW employees' computers on January 8 and 9, 2007 and produced the emails with the relevant terms. (Paper No. 114 at 2.) Defendant did not produce any email from Pritchett's computer because no email existed on Pritchett's hard drive as of at least January 9, 2007. (Paper No. 63 at 4; Paper No. 114 at 3.) Defendant was able to produce some emails written by Pritchett that had been obtained from other employees' computers. (Paper No. 63 at 3.) Around the time Price searched the computer for relevant terms, Wheeler sent the computer to an outside computer company named Automated Computers to verify that there were no emails on the hard drive. (Paper No. 63 at 7; Paper No. 63, Ex. 4 at 37–38.) In April 2007, defense counsel indicated to plaintiff's counsel that there was "nothing on" Pritchett's hard drive.[5] (Paper No. 63 at 4.)

On June 18, 2007, plaintiff retained Kroll Ontrack, a data recovery company, to examine Pritchett's hard drive. (Paper No. 63 at 2.) Kroll Ontrack issued their report ("Kroll Report") on August 15, 2007. Kroll Ontrack found that the "David Pritchett" profile existed on the hard drive at one time, but was no longer active, and that the active profile was that of "Bob Phillips," which was written in January or February 2007. (Paper No. 85, Ex. 1 at 3.) It also confirmed that there were no email messages on the hard drive. (Paper No. 85, Ex. 1 at 3.) The Kroll Report indicated, however, that there was no evidence that a wiping utility feature had been installed or used on the computer. (Paper No. 85, Ex. 1 at 3.) Along with other types of computer activity, the Kroll Report did find evidence of files being sent to the computer's

recycle bin between January 18 and February 13, 2007 and that the disk defragmenter program, which can be used to overwrite files, was run on January 9, 2007. (Paper No. 85, Ex. 1 at 3.)

Plaintiff later asked Kroll Ontrack to examine the hard drive a second time because of confusion over the results of the first exam and defendant's statement its Opposition to the First Motion for Sanctions that "[i]n an effort to accommodate [an] employee who needed a computer, Defendant removed the hard drive from [Pritchett's] laptop and installed a new hard drive. Defendant preserved the hard drive for review and inspection by Plaintiff." (Paper No. 114 at 5.) Knoll Ontrack issued its second report on October 19, 2007 and was not able to determine how the defendant's statement could be completely true, given the evidence of two profiles existing on the hard drive. (Paper No. 115, Ex. 2 at 3–4.) At the motions hearing, defense counsel advised that his previous statements in the Opposition were wrong and confirmed that the hard drive that was produced for plaintiff's inspection was Pritchett's when he was employed with DPW, but that a new profile had been added to that same hard drive to accommodate a new employee, Bob Phillips. Phillips used this hard drive from some point in January until February 21, 2007, when that hard drive was removed and given to plaintiff to inspect, at which time Phillips was given a new hard drive.

At the March 4th hearing, neither expert was able to offer an expert opinion as to why there were no emails on Pritchett's hard drive. Dale Price testified on behalf of the defendant that he expected to find emails on Pritchett's computer when he conducted the search in January 2007, but he did not find any emails at that time. Price also testified that individual employees could set the automatic deletion settings on their own computers' email system, including setting the computer to delete selected emails automatically upon closing the email program without the computer saving any record of the emails. Brian Rydstrom of Kroll Ontrack testified on

---

**5.** At the motions hearing, defendant clarified that this statement referred to the lack of emails on the hard drive, but that there were other types of recoverable documents on the hard drive.

behalf of the plaintiff that, after searching the programs that DPW uses for office email, he determined that there were no email messages on Pritchett's hard drive. Rydstrom observed that, ordinarily, adding an additional profile to the hard drive, like when Price added Phillips's profile, should not result in the deletion of documents from the original profile. To illustrate this point, Rydstrom likened the hard drive to a bank of school lockers, in which each student has his own locker or profile, and his own combination or password to gain access. Like the lockers, two profiles can exist side-by-side and different users can use the same space to store different information, gaining access only to their own information. In order for Rydstrom to assess whether Pritchett's profile was completely overwritten or whether any of Pritchett's emails remain on the hard drive, he would need to search the drive's unallocated space, at a cost of approximately $2,200. Rydstrom stated that he doubted this search would yield anything but the "breadcrumbs" of whatever documents used to be in Pritchett's profile.

## B. *Plaintiff's First Motion for Sanctions*

In the First Motion for Sanctions, plaintiff maintains that she is entitled to a default judgment or, in the alternative, an adverse inference jury instruction because defendant irreparably prejudiced her ability to present her case by failing to preserve electronic data on the hard drive of Pritchett, the person whom plaintiff alleges discriminated against her. Because of what plaintiff characterizes as defendant's bad faith in permanently destroying relevant evidence, plaintiff claims that she has been substantially prejudiced and is effectively denied the ability to litigate her case, which necessitates a default judgment or, at least, an adverse inference instruction. Plaintiff refined her argument regarding how defendant breached its duty to preserve relevant evidence as different facts became available in the papers supporting this motion and at the March 4th hearing.[6] At the hearing, plaintiff's counsel argued that defendant's failure to implement a

process to preserve relevant electronic evidence, which allowed Pritchett's emails to be lost by some unknown means, was evidence of defendant's bad faith and necessitated sanctions for spoliation.

In its Response in Opposition to the First Motion for Sanctions, defendant maintains that plaintiff has been given the opportunity to engage in extensive discovery and defendant has produced numerous documents responsive to plaintiff's discovery requests. To establish that neither defendant nor Pritchett purposely deleted documents, defendant attached as an exhibit approximately 1,700 documents from the DPW file server that Pritchett authored. Defendant also notes that the Kroll Report indicated there was no evidence that a wiping utility was used on Pritchett's hard drive. At the motions hearing, defendant primarily argued that plaintiff had not met her burden to establish that Pritchett's emails contained relevant evidence, which is a necessary element of a claim for sanctions for spoliation.

Defendant also advances the position that it is unlikely that many emails received or authored by Pritchett ever existed at all, and that it is even less likely that relevant emails existed. In his deposition, Pritchett testified that he sent only about three or four emails per week. (Paper No. 114 at 6.) Pritchett claims that, rather than send emails, he would create documents and save them to the DPW file server. Furthermore, Pritchett was on vacation, and then Family and Medical Leave, from July 31, 2006 to November 26, 2006, eventually resigning from the DPW on December 11, 2006. (Paper No. 114 at 4.) He testified that he could not recall if he sent any emails from the time he returned from leave to the time he resigned. (Paper No. 114 at 4.) Therefore, it is not clear whether Pritchett authored any emails from late July to his resignation. Perhaps most significantly, Mayor Rippons, who defendant argues is the actual decisionmaker responsible for the hiring of employees at the level for which plaintiff sought promotion, does not use email at all. (Paper No. 114 at 6.) As a

---

6. In the papers, plaintiff at one time suggested that Pritchett returned to the DPW facility after his resignation to delete files from his computer,

but there has been no evidence presented to substantiate this claim. (Paper No. 63 at 10.)

result, defendant argues, it is highly unlikely that any emails between Pritchett and Mayor Rippons that were relevant to promotion decision ever existed.

### C. Plaintiff's Second Motion for Sanctions

Plaintiff's Second Motion for Sanctions stems from defendant's inclusion of Exhibit 4 with its Opposition to the First Motion for Sanctions.[7] This exhibit was a disk that contained approximately 1,700 documents, which defendant initially represented in its Opposition to plaintiff's First Motion for Sanctions to be documents retrieved from Pritchett's hard drive. (Paper No. 114 at 3.) Plaintiff argues that producing documents from a hard drive that defense counsel had previously represented to have "nothing on it" is proof of defendant's bad faith. (Paper No. 116 at 4.) Plaintiff also maintains that some of the documents included in Exhibit 4 are relevant to this case and were not produced. (Paper No. 121 at 2.) In plaintiff's Reply to the Second Motion for Sanctions, plaintiff identified eight specific documents that she believes are relevant and were not produced.[8] (Paper No. 121 at 2–4.) Plaintiff argues that the documents she believes were relevant, *inter alia,* establish Pritchett's animus against African Americans, such as two memoranda in which Pritchett explained that he was resigning as Director of DPW because of his strained relationship with three City Commissioners, who plaintiff has observed are African American. (Paper No. 121 at 3.) Because defendant, as plaintiff argues, willfully withheld relevant documents, plaintiff reiterates her demand for either a default judgment in her favor or an adverse inference instruction.

Defendant responds that it did not withhold relevant evidence. Although initially describing the documents in Exhibit 4 as being from Pritchett's hard drive, defense counsel states in its Surreply that they are from the DPW file server, which defendant later confirmed at the motions hearing. (Paper No. 123, Attach. 1 at 1–2.) According to defendant, Price previously searched these documents, using the plaintiff's name "Ina Sampson" as a search term; defendant then produced those documents that were responsive to the search and relevant to the issues in this case. (Paper No. 123, Attach. 1 at 2–3.) In response to plaintiff's identification of eight documents she claims are relevant and were withheld during discovery, defendant addressed in its Surreply why each document is not relevant and, therefore, did not need to be produced. (Paper No. 123, Attach. 1 at 3–9.) Defendant maintains that plaintiff has not established that defendant intentionally withheld relevant documents and, therefore, sanctions are not appropriate.

## II. Legal Standard Regarding Sanctions for Spoliation

Plaintiff cites Federal Rule of Civil Procedure 37 to support her claim for sanctions against defendant for spoliation of evidence.[9] Federal courts have two sources of authority to issue sanctions due to spoliation. First, a court may issue sanctions under Rule 37 when a party commits spoliation in violation of a specific court order. *United Med. Supply Co., Inc. v. United States,* 77 Fed.Cl. 257, 264 (2007). The court's second source of power to impose sanctions for spoliation is its inherent authority to control the judicial process. *Id.* at 263 (citing *Chambers v. NASCO, Inc.,* 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)). Plaintiff asserts facts that impli-

7. Although plaintiff at one time referred to the exhibit at issue as Exhibit 2, it is now clear that the appropriate exhibit is Exhibit 4.

8. Plaintiff included an affidavit from a legal assistant to plaintiff's counsel, confirming that most of the documents contained on the disk had not previously been produced. (Paper No. 121, Ex. A.)

9. Plaintiff cites *Mut. Fed. Sav. & Loan Ass'n v. Richards & Associates, Inc.,* 872 F.2d 88 (4th Cir.1989), which relies on the court's authority to impose sanctions based on Federal Rule of Civil Procedure 37(b). While the test set forth in this case is very similar to the test applicable when a court is relying on its inherent authority to impose sanctions, it is not the precise test that this court must apply to this dispute. The court's discretion to impose sanctions under its inherent authority is more limited than that under Rule 37. *Pressey v. Patterson,* 898 F.2d 1018, 1021 (5th Cir.1990). This distinction, however, is of no consequence in this case.

cate the court's inherent authority to impose sanctions because plaintiff alleges that defendant violated the general duty to preserve relevant evidence, rather than violating a specific court order.

■■■■ The term "spoliation" means "the destruction or material alteration of evidence or ... the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir.2001). A party seeking sanctions based on the spoliation of evidence must establish three elements:

> (1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a "culpable state of mind;" and (3) the evidence that was destroyed or altered was "relevant" to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defenses of the party that sought it.

*Thompson v. United States Dep't of Hous. & Urban Dev.*, 219 F.R.D. 93, 101 (D.Md.2003) (citing *Zubulake v. UBS Warburg LLC (Zubulake IV)*, 220 F.R.D. 212, 220 (S.D.N.Y. 2003)). This standard applies when a party is seeking any form of sanctions for spoliation, not just an adverse inference jury instruction. *Zubulake IV*, 220 F.R.D. at 220.

■■■■ As to the first element, "[t]he duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." *Silvestri*, 271 F.3d at 591 (citation omitted). The duty to preserve relevant evidence is an independent duty that exists even if the party seeking the evidence did not request a court order for its preservation. *Thompson*, 219 F.R.D. at 100. In order to fulfill the duty to preserve relevant evidence, "[o]nce a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of

relevant documents." *Id.* at 100 (quoting *Zubulake IV*, 220 F.R.D. at 218).

■■■■ In order to impose sanctions, the court must find evidence as to the second element, that any destruction or loss of documents took place with a "culpable state of mind." The three possible states of mind that satisfy this requirement are bad faith destruction, gross negligence, and ordinary negligence. *Id.* at 101. Although, some courts require a showing of bad faith before imposing sanctions, the Fourth Circuit requires only a showing of fault, with the degree of fault impacting the severity of sanctions. *Silvestri*, 271 F.3d at 590; *United Med. Supply Co., Inc.*, 77 Fed.Cl. at 266. As discussed below, the Fourth Circuit has established guidelines for when the most severe sanctions, namely adverse inference jury instructions and sanctions that dispose of a case such as a default judgment or a dismissal, are appropriate, taking into consideration the spoliator's level of culpability.

■■■■ The third element of the test for imposition of sanctions for spoliation is that the lost documents are relevant to the proponent's claims and defenses. A failure to preserve documents in bad faith, such as intentional or willful conduct, alone establishes that the destroyed documents were relevant. *Thompson*, 219 F.R.D. at 101. The reason relevance is presumed following a showing of intentional or willful conduct is because of the logical inference that, when a party acts in bad faith, he demonstrates fear that the evidence will expose relevant, unfavorable facts. *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir.1995) (citing authority). With a failure to preserve evidence through either gross or ordinary negligence, however, the plaintiff must establish that the lost documents were relevant to her case. *Thompson*, 219 F.R.D. at 101 (quoting *Zubulake IV*, 220 F.R.D. at 220).

■■■■ The test for relevance for the purposes of establishing the third element is somewhat more stringent than merely meeting the standard provided in Federal Rule of

180

Evidence 401.[10] The Fourth Circuit describes the test for relevant evidence necessary to impose sanctions as that evidence which would "naturally have been introduced into evidence." *Vodusek*, 71 F.3d at 156. In *Thompson*, the court described the definition of "relevant evidence" necessary for a court to impose sanctions as follows: "to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defenses of the party that sought it." 219 F.R.D. at 101. This court also finds instructive the standard used in *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 167 F.R.D. 90 (D.Colo.1996) which provides: "The burden is on the aggrieved party to establish a reasonable possibility, based on concrete evidence rather than a fertile imagination, that access to the lost material would have produced evidence favorable to his cause." *Gates Rubber*, 167 F.R.D. at 104 (citations omitted).

■■■ Should a court find that these above-described elements are met, then any sanctions imposed must suit "the purpose of leveling the evidentiary playing field and ... the purpose of sanctioning the improper conduct." *Vodusek*, 71 F.3d at 156. In this case, the plaintiff has asked the court to enter a default judgment against defendant as a sanction for its alleged acts of spoliation.[11] The Fourth Circuit has indicated that courts should only impose sanctions that dispose of a case in the most extreme circumstances:

[T]o justify the harsh sanction of dismissal, the district court must consider both the

spoliator's conduct and the prejudice caused and be able to conclude either (1) that the spoliator's conduct was so egregious as to amount to a forfeiture of his claim, or (2) that the effect of the spoliator's conduct was so prejudicial that it substantially denied the defendant the ability to defend the claim.

*Silvestri*, 271 F.3d at 593.

In *Silvestri*, the court affirmed dismissal of the case after the plaintiff allowed the vehicle, which was the "sole piece of evidence" in this products liability action, to be repaired and sold without giving defendant notice and an opportunity to inspect it.[12] *Id.* at 585. The court found that plaintiff's counsel did not notify the defendant of plaintiff's claims for several years, by which time evidence of the automobile accident was destroyed, which revealed "a level of culpability that was at least negligent and may have been deliberate." *Id.* at 594. Because the *Silvestri* Court could not say that plaintiff's conduct alone justified dismissal pursuant to the first of the two grounds noted above, it addressed the element of prejudice and held that plaintiff's actions "denied [defendant] access to the only evidence from which it could develop its defenses adequately." *Id.* In sum, in order for the court to impose a default judgment, the plaintiff must establish either that defendant's actions amounted to egregious acts of willful spoliation or that plaintiff was highly prejudiced and denied the only means to establish her case.

10. In Rule 401, "relevant" means "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED.R.EVID. 401.

11. Most of the Fourth Circuit cases involving sanctions for spoliation of evidence arise in the context of a defendant asking for dismissal of a plaintiff's claims because of destruction of evidence by the plaintiff. As the Fifth Circuit has noted, "[b]ecause ... rendering default judgment is equally as harsh a sanction as dismissing the case of a plaintiff with prejudice, we cite cases involving these sanctions interchangeably." *Pressey*, 898 F.2d at 1021 n. 2. The court here cites cases involving requests for default judgment and for dismissal interchangeably.

12. *Silvestri* is similar to other products liability cases where a dismissal was warranted because the allegedly defective product was destroyed and the defendant could not obtain the necessary evidence through other means. *Compare King v. Am. Power Conversion Corp.*, 181 Fed.Appx. 373, 377–79, 2006 WL 1344817, at *4–*5 (4th Cir. May 17, 2006) (affirming dismissal for spoliation in a products liability case because defendant suffered irreparable prejudice and could not mount a defense without examining the allegedly defective Uninterrupted Power Source), *with Cole v. Keller Indus., Inc.*, 132 F.3d 1044, 1047 (4th Cir.1998) (vacating a dismissal due to spoliation because there was no bad faith and the opposing party was able to examine the allegedly defective ladder, therefore not suffering substantial prejudice).

■■■■ As an alternative to her request for a default judgment against defendant, plaintiff here requests that the court give an adverse inference jury instruction at trial. In *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148 (4th Cir.1995), the Fourth Circuit addressed when an adverse inference jury instruction would be warranted for spoliation of evidence. The *Vodusek* Court noted that bad faith is not an essential prerequisite to the finding that an adverse inference instruction is appropriate. 71 F.3d at 156. Rather, the court must find the spoliator acted, at a minimum, willfully in the destruction of relevant evidence. *Id.*

> [T]he trial court has broad discretion to permit a jury to draw adverse inferences from a party's failure to present evidence, the loss of evidence, or the destruction of evidence. While a finding of bad faith suffices to permit such an inference, it is not always necessary.... An adverse inference about a party's consciousness of the weakness of his case, however, cannot be drawn merely from his negligent loss or destruction of evidence; the inference requires a showing that the party knew the evidence was relevant to some issue at trial and that his willful conduct resulted in its loss or destruction.

*Id.* If a spoliator's conduct is merely negligent, therefore, the adverse inference instruction is not an appropriate sanction. *See Hodge v. Wal–Mart Stores, Inc.*, 360 F.3d 446, 450–51 (4th Cir.2004) (affirming a denial of an adverse inference request because there was no reasonable basis to conclude that the store manager willfully lost evidence when she did not question a witness about the cause of plaintiff's injury because she incorrectly thought the store's security cameras had captured the event).

In applying the standard to the facts presented in *Vodusek*, the court held that plaintiff's expert's conduct in "employ[ing] destructive methods which rendered many portions of the boat [at issue in the products liability case] useless for examination by the defendants and their experts," was willful and necessitated an adverse inference because he "ignored the possibility that others might have entertained different theories to

which the destroyed portions might have been relevant." *Id.* at 155–57. In order for the court to give an adverse inference instruction, plaintiff must establish that defendant acted either willfully or in bad faith in failing to preserve relevant evidence, while, if the court finds that the defendant's conduct was merely negligent, an adverse inference instruction is not an appropriate sanction.

### III. *Discussion*

■■■■ In applying the test for determining whether to impose sanctions for spoliation, the first element is whether "the party having control over the evidence had an obligation to preserve it when it was destroyed or altered." *Thompson*, 219 F.R.D. at 101. It is clear that defendant had a duty to preserve relevant evidence that arose no later than June 26, 2006, when plaintiff's counsel sent the letter to defendant requesting the preservation of relevant evidence, including electronic documents. At that time, although litigation had not yet begun, defendant reasonably should have known that the evidence described in the letter "may be relevant to anticipated litigation." *Silvestri*, 271 F.3d at 591. It is also clear that some documents that were under defendant's control, namely the email messages at one time located on Pritchett's computer, were somehow lost or destroyed after defendant's duty to preserve relevant evidence had attached, satisfying the first element of the *Thompson* analysis.

The second element of the applicable test is whether the destruction or loss was accompanied by a "culpable state of mind." *Thompson*, 219 F.R.D. at 101. For the following reasons, the court finds there is insufficient evidence from which to conclude that defendant acted willfully or in bad faith when it failed to preserve the electronic evidence at issue. First, neither of the parties' experts was able to give an expert opinion on why no emails exist on Pritchett's computer. Dale Price testified on defendant's behalf that he expected to find emails on the hard drive when he searched it for discoverable information in January of 2007, but he was not able to articulate a reason for why there

were no emails present. Brian Rydstrom testified on behalf of plaintiff that some of Pritchett's emails may be in the hard drive's unallocated space, but that he is presently unsure why there are no emails in the allocated space of the hard drive. Although Mr. Rydstrom noted that another examination could yield further information, it is unlikely to recover more than the "breadcrumbs" of Pritchett's original emails.[13]

Second, plaintiff did not present any evidence that would suggest that Pritchett or anyone on behalf of defendant purposely destroyed any documents on the hard drive. Although plaintiff suggested that Pritchett may have deleted documents on his hard drive after he retired, there is no evidence that occurred. At the motions hearing, Price testified that he was with Pritchett the day he came to retrieve his personal belongings from the DPW office and that Pritchett did not access the computer at that time. Also, because of the dates of his vacation and Family and Medical Leave, Pritchett had limited access to the computer after defendant received plaintiff's preservation letter in June of 2006. Furthermore, the Kroll Report did not find any evidence of a wiping utility being used or downloaded on to Pritchett's hard drive at any time or evidence that the SpyBot program was used to delete or overwrite files. In short, plaintiff did not present any evidence to establish that Pritchett or any of defendant's other employees or agents intentionally or willfully deleted Pritchett's emails.

Third, while defendant's efforts to retain relevant documents were not exemplary, they do not rise to the level of bad faith. Defendant did not, as *Thompson* requires,

"put in place a 'litigation hold' to ensure the preservation of relevant documents." 219 F.R.D. at 100. But, as Price testified, he did instruct certain DPW employees to retain their files. Notably, Price instructed Pritchett and Wheeler, two of the people most involved in this dispute, not to delete any electronic files, including emails. Rydstrom testified at the motions hearing that there were documents on Pritchett's hard drive, so there was not a complete erasure of the hard drive. It is also of note that plaintiff does not allege that any other DPW employees' emails were not properly retained. In fact, defendant produced hundreds of emails from other DPW employees, many of which this court has reviewed, and some of those contained emails authored by Pritchett. While defendant could have done more to ensure the preservation of electronic evidence, plaintiff has not established that defendant acted in bad faith.[14] The court concludes that, in the absence of any evidence that defendant's actions were willful or in bad faith, the defendant's failure to preserve Pritchett's emails was negligent. *See Zubulake IV*, 220 F.R.D. at 220 ("Once the duty to preserve attaches, any destruction of documents is, at a minimum, negligent.").

Because the court concludes that the defendant's "culpable state of mind" was that of negligence, the court must also address the third element of the test for imposing sanctions due to spoliation, which is whether the lost documents were relevant. "[W]hen the destruction is negligent, relevance must be proven by the party seeking the sanctions . . . to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims and defenses of the party that sought it." *Thompson*, 219

---

**13.** At the March 4th hearing, plaintiff's counsel requested that defendant share in the $2,200 cost of searching the computer's unallocated space, although plaintiff's expert said that it is unlikely that such a search would produce relevant documents. The court denies plaintiff's request.

**14.** In a March 6, 2008 letter to the court, plaintiff's counsel cites to two cases which they contend illustrate, by analogy, defendant's bad faith. The court has reviewed those cases and does not find them instructive here because the fact patterns of the other cases are quite different from the facts of this case. *See Broccoli v. Echostar Communications Corp.*, 229 F.R.D. 506, 511

(D.Md.2005) ("In short, the evidence of a regular policy at Echostar of 'deep-sixing' nettlesome documents and records (and of management's efforts to avoid their creation in the first instance) is overwhelming."); *Metro. Opera Ass'n, Inc. v. Local 100, Hotel Employees & Rest. Employees Int'l Union*, 212 F.R.D. 178, 222–23 (S.D.N.Y.2003) (describing a failure to implement a systematic procedure to preserve documents in the absence of a regular document retention policy that was set against the backdrop of widespread, intentional abuses of the discovery process by defendant and its counsel).

F.R.D. at 101 (citations omitted). In order for the court to order sanctions for negligent spoliation, the plaintiff must establish to "a reasonable possibility, based on concrete evidence rather than a fertile imagination, that access to the lost [emails] would have produced evidence favorable to [her] cause." *Gates Rubber,* 167 F.R.D. at 104 (citations omitted). As discussed below, the court concludes that plaintiff has not established that the lost evidence would have supported her claims.

While there is no doubt that Pritchett provided input and a recommendation to Mayor Rippons on the decision of whether to promote plaintiff, the record in this case establishes that it is completely speculative to assume that any emails relevant to the promotion decision were lost. First, Pritchett testified that he does not use email often, instead drafting other types of documents and saving them to the DPW file server. Therefore, it could be inferred that Pritchett would have been more likely to create a document containing important information and save it to the file server than he was to write an email.[15] Second, there are a limited number of people to whom Pritchett would have communicated about the decision of whether to promote plaintiff, specifically Wheeler and Mayor Rippons. Wheeler testified in his deposition that he retained all of his emails and that they have already been produced to plaintiff. Mayor Rippons, who was the actual decisionmaker in this case, testified at his deposition that he does not use email at all. Based upon these facts, the likelihood that there were relevant emails from Pritchett regarding plaintiff's potential promotion (or demonstrating racial or disability-based animus or otherwise) is remote. Thus, it would be sheer speculation to conclude that there were any emails which were lost or destroyed and which contained rele-

vant information, let alone evidence favorable to plaintiff's case.

In sum, while it is evident that there were documents that defendant failed to preserve, there is no evidence that those documents constituted relevant evidence. In cases where courts have imposed sanctions for spoliation, the lost or destroyed evidence was clearly relevant, that is, a reasonable factfinder could conclude the evidence would have supported the proponent's claims or defenses. No such conclusion can be reached here. *See Vodusek,* 71 F.3d at 155–57 (holding that an adverse inference was appropriate because the plaintiff's expert willfully used destructive methods on the boat at issue in this products liability action without regard to the fact that defendant and its experts were unable to examine the boat); *Broccoli,* 229 F.R.D. at 511–12 (noting that defendant did not preserve vital employment and termination documents, including emails in which plaintiff had made complaints to his supervisors about being sexually harassed and the internal investigative file regarding those complaints). Because plaintiff has not established that access to Pritchett's emails would have produced evidence which a reasonable factfinder could conclude supported her claims, plaintiff's Motion to Sanction Defendant for Spoliation of Evidence and to Grant Default Judgment or Adverse Jury Instruction ("First Motion for Sanctions") is denied.[16]

For the following reasons, the court also concludes that plaintiff's Second Motion for Sanctions must be denied. In that motion, plaintiff claims that defendant withheld relevant documents from production and first provided these documents to plaintiff in defendant's Opposition to plaintiff's First Motion for Sanctions. The documents in dispute, while at one time were characterized by defendant as coming from Pritchett's hard drive, originated from the DPW file server.[17]

15. In fact, it was noted at the motions hearing that, when Pritchett communicated to Mayor Rippons that another employee, Enessa Whitten, was not interested in being promoted to the Assistant Director position, he did so through a typed memo, not through email.

16. Because the plaintiff did not establish that the lost material was relevant to her claims or that

she is entitled to the imposition of sanctions, the court does not here address the specific requirements necessary to impose a default judgment under *Silvestri,* 271 F.3d at 593, or an adverse inference under *Vodusek,* 71 F.3d at 156.

17. Plaintiff also argues that defendant's production of documents from Pritchett's hard drive previously represented by defendant to have

Defendant asserts that it previously reviewed all documents from the DPW file server and produced those documents which it concluded were relevant to this dispute. Plaintiff cited to eight specific documents in her Reply to the Second Motion for Sanctions which she maintains are relevant and were not produced during discovery. The court has reviewed the documents and does not find that they were improperly withheld from production by defendant.

Plaintiff argues that four of the eight documents provide relevant evidence of Pritchett's animus against African Americans, while two other documents indicate that Pritchett treated African American employees differently than Caucasian employees. After reviewing these documents and considering plaintiff's proffer of relevance, the court finds that none of the six documents in question appear to relate to race in any way or tend to show any evidence of Pritchett demonstrating an animus against African Americans. Although the remaining two documents cited by plaintiff refer to the plaintiff, they do not appear to relate to defendant's decision not to promote plaintiff. It should also be noted that neither document contains the full name "Ina Sampson," which was the search term that Dale Price used to identify potentially relevant documents from the DPW file server, as specifically requested by plaintiff's counsel. (Paper No. 114 at 2–3.) Accordingly, plaintiff has failed to establish that defendant intentionally withheld any relevant evidence so as to warrant the imposition of the sanctions of default judgment or an adverse inference instruction. Plaintiff's Motion to Sanction Defendant for Suppression of Relevant Evidence ("Second Motion for Sanctions") is denied.

■ The court is of the view, however, that monetary sanctions against defendant are appropriate given that the second computer examination done by Kroll Ontrack at plaintiff's request was necessitated solely by defendant's misstatement. Plaintiff only

pursued the second exam because defendant stated in its Opposition to the First Motion for Sanctions that "[i]n an effort to accommodate [an] employee who needed a computer, Defendant removed the hard drive from [Pritchett's] laptop and installed a new hard drive. Defendant preserved the hard drive for review and inspection by Plaintiff." (Paper No. 114 at 5.) In fact, the new employee, Bob Phillips, used Pritchett's former hard drive for several weeks before the drive was removed and given to plaintiff for examination. This mischaracterization in defendant's Opposition, which implies that Phillips never used Pritchett's former hard drive, induced plaintiff to seek a second examination of the hard drive, the sole purpose of which was to reconcile this statement with the results of the first computer examination. Accordingly, defendant is ordered to pay for the costs associated with the second examination that Kroll Ontrack performed on Pritchett's hard drive, the report of which is attached to plaintiff's Reply to First Motion for Sanctions (Paper No. 115, Ex. 2). Plaintiff shall submit a bill for said examination to defendant within ten (10) days of this order and defendant shall submit payment to plaintiff within (10) days of receipt of the bill.

## IV. *Conclusion*

For the foregoing reasons, the plaintiff's First Motion for Sanctions and plaintiff's Second Motion for Sanctions are denied. A separate order shall issue.

---

"nothing on it" is proof of the defendant's bad faith. (Paper No. 116 at 4–5.) As defense counsel corrected at the motions hearing, however, the documents at issue were not from plaintiff's hard drive but rather from the DPW file server. While defense counsel's statement was erroneous, it does not establish defendant's bad faith.